ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  98-40024-JAR |
| | ) | 01-3103-JAR |
| GARY JACK HOLLIS, JR., | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |
| | ) | |

## MEMORANDUM AND ORDER DENYING IN PART MOTION UNDER 28 U.S.C. SECTION 2255

This matter, originally filed under 28 U.S.C. § 2255, is before the Court on remand from the Tenth Circuit Court of Appeals for the following actions: (1) to conduct an evidentiary hearing to determine whether petitioner's counsel overrode his desire to testify at trial; and (2) to abate final disposition of the *Blakely/Apprendi* issues pending the outcome of the decision in *United States v. Booker*.[1]  The Court conducted an evidentiary hearing in line with the Circuit's first directive on April 10, 2006 and it was continued on May 3, 2006.  The parties agreed to bifurcate the final briefing of the issues at stake so that the Court first decides the issue of ineffective assistance of counsel based on petitioner's claim that trial counsel overrode his desire to testify at trial.  Because the Court finds that counsel did not override petitioner's desire to testify at trial, petitioner's motion is denied in part and the parties are ordered to brief the issue of final disposition of the *Blakely/Apprendi* issues in light of the *Booker* decision.

---

[1]543 U.S. 220 (2005).

**I. Background**

On March 24, 1998 Mark Works was appointed to represent Hollis at the preliminary hearing in his criminal case and on July 1, 1998, Hollis was charged in three counts of an eight-count Superseding Indictment.  Count one charged Hollis with conspiracy to manufacture approximately 3.5 pounds of methamphetamine on or about March 26, 1997.  Count six charged Hollis with manufacturing methamphetamine on or about September 8, 1997.  Count eight charged Hollis with manufacturing methamphetamine on or about March 26, 1997.  Petitioner's co-defendant, Wayne Getman was charged in seven counts of the eight-count Superseding Indictment.  The case was originally assigned to Judge Saffels.

Hollis pled not guilty and proceeded to trial.  On August 4, 1998, James Chappas was appointed to replace attorney Mark Works.  Trial began on November 30, 1998 and lasted for seven days.  Hollis did not testify in his own behalf at trial.  According to petitioner, had he testified, he would have admitted to counts six and eight, in the hopes of an acquittal on count one.  The jury found Hollis guilty of all three counts as charged in the Superseding Indictment.

The Tenth Circuit affirmed petitioner's convictions and sentence.[2]  Hollis' petition for a writ of certiorari with the Supreme Court that was denied,[3] and he then moved to vacate his sentence under section 2255.  (Doc. 250.)  He made three claims in his habeas motion: (1) *Apprendi v. New Jersey*[4] rendered his conviction unconstitutional; (2) ineffective assistance of counsel based on a failure to call Getman as a witness, refusal to allow Hollis to testify and to

_____

[2]No. 99-3233, 2000 WL 235250 (10th Cir. Mar. 2, 2000).

[3]531 U.S. 854 (2000).  The petition was denied on October 2, 2000; therefore, petitioner's decision became "final" on that date.

[4]530 U.S. 466 (2000).

inform him that it was his choice to make, and failure to give an opening statement; and (3) challenges to the drug quantity used for sentencing and ineffective assistance of counsel for failure to raise the issue.

On June 7, 2002, Judge Saffels denied petitioner's 2255 motion and his motion for reconsideration (Docs. 261, 264) and the Tenth Circuit later affirmed upon initial consideration.[5] Hollis then filed a petition for rehearing and for rehearing en banc on his ineffective assistance of counsel claim, and filed a supplemental brief in light of the *Blakely* decision.  The Tenth Circuit granted in part the petition for rehearing and remanded the case back to this Court  (Doc. 275).[6] The court denied petitioner's request for an en banc rehearing and vacated its original decision to the extent it is inconsistent with the Order on Rehearing.  The Court has conducted an evidentiary hearing, as directed by the Order on Rehearing and is prepared to rule on the first issue presented on remand.

## II.  Discussion

In order to succeed on a claim of ineffective assistance of counsel, Hollis must meet the two-prong test set forth in *Strickland v. Washington*.[7]  Under that test, Hollis must first show that his counsel's performance was deficient because it "fell below an objective standard of reasonableness."[8]  Second, he must show that counsel's deficient performance actually

---

[5]93 Fed. Appx. 201 (10th Cir. 2004).  In that decision, the court upheld the district court's application of the concurrent sentence doctrine in finding that Hollis suffered no prejudice under *Strickland v. Washington* even though counsel fell below an objective standard of reasonableness.

[6]No. 02-3341, slip. op. (10th Cir. Oct. 20, 2004).

[7]466 U.S. 668 (1984); *see Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004) (treating allegation that trial counsel would not let defendant take the stand despite his desire to do so as an ineffective-assistance claim), *cert. denied*, 544 U.S. 928 (2005).

[8]*Id.* at 688.

prejudiced his defense.[9]

The Tenth Circuit found in its Order on Rehearing that the prejudice prong is met here,[10] so the Court need only decide the first prong of the *Strickland* test.  Hollis contends that trial counsel James Chappas overrode his decision to testify on his own behalf at trial.  If Chappas did prevent Hollis from testifying against his wishes then Chappas' conduct fell below an objective standard of reasonableness and the first prong of *Strickland* would be met.[11]

A criminal defendant has a constitutional right to testify on his own behalf at trial.[12] Furthermore,

> The decision whether to testify lies squarely with the defendant; it is not counsel's decision.  Defense counsel should inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to him.  Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant.  Yet counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy.[13]

But, the Court does not have a duty to ensure that a defendant who does not testify has waived

---

[9]*Id.*

[10]In the Order on Rehearing, the Tenth Circuit concluded that it improperly applied the concurrent sentence doctrine to Hollis' case in finding a lack of prejudice.  "That doctrine provides that once a reviewing court has affirmed on appeal a conviction and sentence, the court need not consider the defendant's challenge to any convictions on additional counts which bear concurrent sentences of the same or lesser term."  No. 02-3341, slip. op., at 4  (10th Cir. Oct. 20, 2004).  But the court reevaluated the prejudice prong and found that the concurrent sentence doctrine was inapplicable.  Instead, the court could not say with assurance that the conspiracy evidence was so strong that the trial outcome would have been different had Hollis testified that he was guilty of the manufacturing counts, but not the conspiracy count.  *Id.* at 5.

[11]*Cannon*, 383 F.3d at 1171.

[12]*Rock v. Arkansas*, 483 U.S. 44, 49–52 (1987).

[13]*Cannon*, 383 F.3d at 1171 (citations omitted).

that right.[14]  Moreover, "[w]hen a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct."[15]  The Court conducted an evidentiary hearing on this issue to develop a record on this claim.  Both the defendant and Chappas testified at the hearing with different accounts of how the decision that Hollis would not testify came to pass.

Hollis testified that Chappas failed to prepare him to testify in his defense, failed to tell him he had an absolute right to testify, and became "irate" when Hollis would indicate that he wanted to testify.  Specifically, Hollis testified that after the government rested its case, Chappas informed the Court that the defense rested and that this was the first time he learned that he would not be testifying.  Hollis testified and Chappas admitted that Judge Saffels did not require Hollis to affirm on the record his intention not to testify.  Hollis testified that about fifteen seconds after Chappas rested without calling him to the stand, his instinct was to address the court.  However, he relayed that when he had tried speaking out in the past, "judges had slapped him down."

Chappas testified that he had prepared Hollis to testify throughout the tenure of his representation, that he told Hollis that the decision whether to testify was up to him, and that Hollis decided when the government rested its case that he did not want to testify.[16]  Further, according to Chappas, Hollis was an incredibly difficult client to work with because he was hostile and had a short attention span.  For example, when Chappas would provide him with a

---

[14]*United States v. Williams*, 139 Fed. Appx. 974, 976 (10th Cir. 2005) (citing *United States v. Ortiz*, 82 F.3d 1066, 1069–70, n.8 (D.C. Cir. 1996); *United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983).

[15]*United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000); *see Williams*, 139 Fed. Appx. at 976.

[16]Chappas admitted that up until the government rested its case, Hollis was interested in testifying.

5

discovery document, Hollis would only look at it for a brief minute and then would be angry about whatever it was in the document that he disagreed with.  Chappas testified that although he was prepared to call Hollis to testify, he explained to him that the trial was going to be a "bloodbath."  He told Hollis that the government had a strong case and that he wanted him to be prepared to explain the government's incriminating evidence.  He testified that he did not provide Hollis with a list of specific questions he was going to ask, but that he attempted to familiarize Hollis with the physical evidence, that he discussed asking him questions relating to witnesses' motives, and that he told him that he wanted him to explain the evidence in support of the charge of manufacturing methamphetamine.

Before Judge Saffels recessed the trial at the end of the first week, he asked Chappas how many witnesses he intended on calling.  Chappas recalls telling Judge Saffels that he may have one witness and that witness would be the client, but that it was "subject to a little dispute."[17]  Chappas testified that he used the word "dispute" incorrectly.  He testified that he meant that it was still an open issue.  Chappas testified that he understood that he and Hollis agreed to wait until the close of the government's case the following Monday.  The next Monday, when the government rested, Chappas testified that Hollis turned to him and said that he did not think he should testify.  At that point, Chappas informed Judge Saffels at the bench of Hollis' decision on the record, without Hollis present.

Hollis now argues that either Chappas is not a credible witness and overrode Hollis' decision to testify, or that Chappas is credible, but his conduct fulfills the first prong of the *Strickland* test because "it is undisputed that Mr. Chappas did not tell him that he had the right to

---

[17](Doc. 182 at 976.)  During his testimony, Chappas also highlighted the fact that he did not give an opening statement at the beginning of the trial because at that point, he was still unsure whether Hollis would testify.

testify and that was solely his decision."

First, Hollis argues that Chappas is not credible because his testimony regarding Hollis' hostility and stubbornness was not logical.  Hollis argues that if this testimony were true, then it "seems counterintuitive" that Hollis would have so suddenly changed his mind about testifying.  But Chappas explained multiple times to the Court that he and Hollis had discussed that they would hold off on making the decision to testify until they saw all of the government's evidence.  Chappas even refrained from giving an opening statement at the beginning of the trial because he was unsure whether Hollis would testify.  According to Chappas, Hollis looked scared after the government rested its case, and told him that he did not think he should testify.  Furthermore, there is nothing in the record up until this habeas petition that shows Hollis gave Judge Saffels any indication at any time that his attorney was not following his wishes on this matter.  Because Hollis failed to alert the trial court that he desired to testify or that there was a disagreement between him and his attorney, the waiver of the right to testify could be inferred.[18]  The Court finds that Chappas' testimony is more credible than Hollis' as a result and that Chappas did not override Hollis' decision to testify.

The Court also rejects Hollis' second theory; that it is undisputed that Chappas failed to inform Hollis that the decision was an absolute right of his to make.  Chappas' testimony at the hearing was that he told Hollis the decision to testify was up to him.  Hollis argues that the transcript reveals that Chappas recognized there was "a dispute" about whether he would be called as a witness.  However, Chappas explained that this was a case of poor word choice and that he meant that the decision had not been made yet.  The Court agrees that the clearest method

---

[18]*See United States v. Williams*, 139 Fed. Appx. 974, 976 (10th Cir. 2004).

for it to determine Hollis' true intentions would have been if Chappas had asked Judge Saffels to affirm Hollis' intention not to testify on the record with Hollis.  Unfortunately, this did not occur, so the Court construes the evidence that is in the record before it.  The Court finds Chappas' testimony more credible that he did not override Hollis' decision to testify at trial and that he informed Hollis that the decision was one for Hollis to make alone.  Therefore, the Court denies in part Hollis' remanded Motion to Correct Sentence under 28 U.S.C. § 2255.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner's Motion to Correct Sentence Under § 2255 (Doc. 261), as remanded by the Tenth Circuit Court of Appeals, is **DENIED IN PART**.  The parties are ordered to brief the remaining issue on final disposition of the *Apprendi/Blakely* issues by the following deadlines: **defendant's brief is due no later than June 26, 2006; the government's brief is due no later than July 10, 2006.**

**IT IS SO ORDERED**.

Dated this 14th day of June 2006.


    S/ Julie A. Robinson

**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**